**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MISSOURI**
**NORTHERN DIVISION**

| | | |
|---|---|---|
| JENNIFER JOHNSON and S.J., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| CALLAWAY COUNTY, MISSOURI, | ) | |
| DARRYL MAYLEE, | ) | |
| CLAY CHISM, | ) | Case No. 2:26-CV-00001-NCC |
| DETENTION OFFICER EVANS, | ) | |
| AUDRAIN COUNTY, MISSOURI, | ) | |
| MATT OLLER, | ) | |
| TIMOTHY TANNER, and | ) | |
| ADVANCED CORRECTIONAL | ) | |
| HEALTHCARE, INC., | ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM AND ORDER**

This matter is before the Court on Defendant Advanced Correctional Healthcare, Inc.'s ("ACH") Motion to Dismiss (Doc. 31). The motion is fully briefed (Docs. 32, 33, 34). The parties have consented to the jurisdiction of the undersigned United States Magistrate Judge pursuant to Title 28 U.S.C. § 636(c) (Doc. 16). For the following reasons, ACH's motion will be **GRANTED in part** and **DENIED in part**.

## I. Procedural Background

This case arises from the death of Timothy Johnson ("Decedent"), who died by suicide on November 29, 2022, while detained at the Audrain County Jail (Doc. 3). Decedent's suicide occurred three days after he was transferred from the Callaway County Jail, where he had been placed on suicide watch (*id.* at 10-13). Plaintiffs allege, among other things, that Decedent's suicide watch status, medical records, and treatment plans were not conveyed to anyone at the

Audrain County Jail, and that Defendants actions or inactions resulted in a failure to abate Decedent's suicide risk, culminating in his death. *See* Doc. 3.

Plaintiffs are Decedent's surviving spouse and minor child (*id*. at 2-3). Defendant ACH is a foreign, for-profit corporation that provides contracted healthcare to individuals detained at correctional facilities (*id*. at 7). In November of 2022, ACH was legally obligated to provide healthcare services to individuals detained at both the Callaway County Jail and the Audrain County Jail pursuant to contracts between ACH and the individual counties (*id*.). ACH employed nursing staff and doctors at both jails (*id*.).

Plaintiffs originally filed suit on November 26, 2025 in the Circuit Court of Audrain County, Missouri (Doc. 1). Defendants removed the matter to federal court on January 6, 2026, on the basis of federal question jurisdiction pursuant to 28 U.S.C. § 1331 (*id*.). Plaintiffs allege the following claims under 42 U.S.C. § 1983: Deliberate Indifference against Defendant Evans (Count I); Deliberate Indifference (Unconstitutional Custom) against Defendants Callaway County, Chism, Maylee, and ACH (Count II); Deliberate Indifference (Failure to Train or Supervise) against Defendants Callaway County and Chism (Count III); Deliberate Indifference against Defendant Tanner (Count IV); Deliberate Indifference (Unconstitutional Custom) against Defendants Audrain County, Oller, and ACH (Count V); and Deliberate Indifference (Failure to Train or Supervise) against Defendants Audrain County and Oller (Count VI). Plaintiffs also bring the following claims under Missouri law: Wrongful Death against Defendant Evans (Count VII); Wrongful Death against Defendant Tanner (Count VIII); and Wrongful Death/Medical Malpractice against Defendant ACH (Count IX) (Doc. 3).

ACH moves to dismiss all claims against it in Counts II, V, and IX, on the basis that Plaintiffs have failed to state a claim upon which relief can be granted (Doc. 31).

## II. Legal Standard

### A. Motion to Dismiss

At the outset, the Court notes that ACH filed an Answer before it filed its Motion to Dismiss (Docs. 6, 31). A Rule 12(b)(6) motion cannot be filed after an answer has been filed. *See* Fed. R. Civ. P. 12(b); *Westcott v. City of Omaha*, 901 F.2d 1486, 1488 (8th Cir. 1990). Under Rule 12(h)(2) however, "[a] defense of failure to state a claim upon which relief can be granted" may be raised in a motion for judgment on the pleadings under Rule 12(c). Fed. R. Civ. P. 12(h)(2)(b). The Court will, therefore, treat ACH's motion as if it had been brought as a Rule 12(c) motion. *See Westcott*, 901 F.2d at 1488. Notably, "[t]he distinction is purely formal, because we review [a] 12(c) motion under the standard that governs 12(b)(6) motions." *Id*. The applicable Rule 12(b)(6) standard is set forth below.

Federal Rule of Civil Procedure 12(b)(6) provides for a motion to dismiss based on the "failure to state a claim upon which relief can be granted." To survive a motion to dismiss, a complaint must show "'that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the … claim is and the grounds upon which it rests.'" *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" to defeat a motion to dismiss. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 555). "[O]nly a complaint that states a plausible claim for relief survives a motion to dismiss." *Iqbal*, 556 U.S. at 679 (citing *Twombly*, 550 U.S. at 556).

"The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (citation omitted). The pleading standard of Rule 8 "does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555). "When ruling on a defendant's motion to dismiss, a judge must accept as true all of the factual allegations contained in the complaint." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). All reasonable inferences from the complaint must be drawn in favor of the nonmoving party. *Richter v. Advance Auto Parts, Inc.*, 686 F.3d 847, 850 (8th Cir. 2012).

## III. Facts Alleged[1]

Plaintiffs allege that one week prior to Decedent's death, he was arrested by the Fulton Police Department during the early morning hours of November 22, 2022 (Doc. 3 at 8). The day before, Decedent had attended the funeral of both his father and his step-mother, who died on November 5, 2022, and November 7, 2022, respectively (*id.*). Decedent was placed in custody at the Callaway County Jail and received by Officer Charles Harrell, who performed Decedent's medical intake (*id.*). The medical intake revealed the following: Decedent had previous mental or emotional problems; he was actively receiving treatment ("medication and doctors") for mental and emotional problems; he was hospitalized for mental or emotional problems at the University of Missouri Psychiatric Center in the week before his arrest; he had experienced the significant personal loss of his step-mother and his father in the last year before his arrest; he had tried to commit suicide on November 8, 2022; he was prescribed "Invaga," an antipsychotic; and

[1] The following facts are taken from the Petition (Doc. 3). For the purposes of this motion to dismiss, the facts are accepted as true.

he made suicidal statements at the time of his intake (*id.*). The medical intake screening further revealed that Decedent had wished he were dead in the past few weeks; had felt that he or his family would be better off if he were dead; and he had thoughts of killing himself within the past few weeks (*id.* at 8-9). The medical intake form reflected a negative response to the question asking whether he had ever tried to kill himself, but the handwritten version of the screening questions indicated Decedent's positive response to the same question (*id.* at 9). Because the medical intake screening identified a suicide risk, Officer Harrell was prompted to "[c]ontact the practitioner or mental health clinician responsible for the patient's care for further instruction" (*id.*).

On November 22, 2022, Decedent was seen by Callaway County Jail's contracted nurse, an employee of ACH (*id.* at 9). Decedent was prescribed Abilify (aripiprazole), an antipsychotic, through March 22, 2022 (*id.*). ACH's nurse requested, and Decedent underwent, a behavioral health screening (*id.* at 10). On the screening form, Decedent self-reported that he was not suicidal, though it was noted he was crying through the entire interview (*id.*). Decedent was placed on suicide watch, housed separately from the general population, and subjected to observation every fifteen minutes (*id.*). Decedent's medical records from Callaway County Jail do not include any orders removing him from suicide watch status (*id.* at 11).

On November 26, 2022, Decedent was transferred to the Audrain County Jail on a warrant for charges in Audrain County, Missouri (*id.*). The transporting officer from Callaway County, Defendant Evans, did not inform the arresting officer at Audrain County, Defendant Tanner, that Decedent had been on suicide watch (*id.* at 11-12). Evans provided warrant paperwork, but no medical records, information, treatment plans, or status was provided to

Tanner or requested by him (*id*. at 12). According to Audrain County Jail's "Medical Questionnaire," which relies exclusively on an individual's self-reports to determine whether an individual is suicidal, Decedent was suffering from a "Psychiatric Disorder" (*id.* at 12-13). Three days after transfer, on November 29, 2022, Decedent hung himself in his cell with a knotted bedsheet (*id*. at 13).

## IV. Discussion

In its motion, ACH moves to dismiss all claims against it in Counts II, V, and IX (Doc. 31). The Court will first address Plaintiffs' federal constitutional claims brought pursuant to 42 U.S.C. § 1983 (Counts II and V), and then turn to Plaintiffs' state law claim (Count IX).

### A. Deliberate Indifference – Unconstitutional Custom (Counts II and V)

In Counts II and V, Plaintiffs bring claims of deliberate indifference based on unconstitutional custom against ACH and others in violation of 42 U.S.C. § 1983 and the Eighth and Fourteenth Amendments (Doc. 3 at 28-31, 38-40). Count II includes allegations related to the Callaway County Jail while Count V includes allegations related to the Audrain County Jail (*id*.).

ACH asserts these claims should be dismissed for various reasons, including: Plaintiffs fail to allege facts contending ACH did anything improper; the allegations show ACH provided treatment to Decedent at the Callaway County Jail but include no allegations that ACH had any involvement with Decedent's care and treatment at the Audrain County Jail; and the policies and procedures at issue are those of the jails, not ACH (Doc. 32 at 5). ACH further argues that Plaintiffs fail to identify an ACH policy that is unconstitutional on its face; fail to allege ACH was on notice that any alleged policy was inadequate or on notice of any ACH misconduct at all;

and fail to adequately allege any ACH policy or custom was a moving force behind Decedent's death (Doc. 32 at 5-6). ACH also asserts Plaintiffs fail to point to even one prior instance of unconstitutional conduct by ACH related to the handling of a detainee's suicide watch that would have put ACH on notice of a widespread, persistent pattern of unconstitutional misconduct (*id*. at 7).

Plaintiffs respond that at this stage in the proceedings, they need not plead the existence of an unconstitutional policy or custom, and need only allege facts *that would support the existence* of an unconstitutional policy or custom, citing *Doe v. Sch. Dist. of Norfolk*, 340 F.3d 605, 614 (8th Cir. 2003) (Doc. 33 at 4). Plaintiffs reiterate they are not limited to proceeding on a theory based on a facially unconstitutional written policy, and may proceed on their pleadings of unconstitutional custom and failures to formulate, adopt, and enforce adequate policies and procedures (*id*. at 5). For the reasons set forth below, the Court agrees with ACH that Plaintiffs have failed to state plausible claims against ACH in Counts II and V.

"As a pretrial detainee, [Decedent] was entitled to the protections guaranteed by the Due Process Clause of the Fourteenth Amendment and had 'at least as great a protection as that afforded convicted prisoners under the Eighth Amendment.'" *Smith v. Lisenbe*, No. 4:20 CV 804 JMB, 2022 WL 407142, at *7 (E.D. Mo. Feb. 10, 2022), *aff'd*, 73 F.4th 596 (8th Cir. 2023) (quoting *Luckert v. Dodge County*, 684 F.3d 808, 817 (8th Cir. 2012) (quotation marks and citations omitted)). Further, "[p]risoners have a 'clearly established constitutional right to be protected from the known risks of suicide and to have their serious medical needs attended to.'" *Whitney v. City of St. Louis, Missouri*, 887 F.3d 857, 860 (8th Cir. 2018) (modified) (quoting *Yellow Horse v. Pennington Cty*., 225 F.3d 923, 927 (8th Cir. 2000)). "The Eighth Amendment

prohibits jail officials from acting with deliberate indifference towards risks of suicide" and "[t]he Fourteenth Amendment extends this protection to pretrial detainees." *Id*. "Whether an official was deliberately indifferent requires both an objective and a subjective analysis." *Jackson v. Buckman*, 756 F.3d 1060, 1065 (8th Cir. 2014). To prevail on their deliberate indifference claims, Plaintiffs must allege facts showing that (1) ACH had actual knowledge that Decedent had a substantial risk of suicide and (2) ACH failed to take reasonable measures to abate that risk. *Whitney*, 887 F.3d at 860.

"Section 1983 creates a cause of action against 'every person, who under color of any statute, ordinance, regulation, custom, or usage' subjects any person to deprivation of immunities secured by the Constitution or federal laws." *Crumpley-Patterson v. Trinity Lutheran Hosp.*, 388 F.3d 588, 590 (8th Cir. 2004) (quoting 42 U.S.C. § 1983). Although § 1983 "secures most constitutional rights from infringement by governments, not private parties," if "a private party acts under color of state law, . . . , it can be held liable under § 1983." *Id.*

ACH is a private corporation that contracted with the Callaway County Jail and Audrain County Jail to provide medical services, and was, accordingly, acting under color of state law for the purposes of these claims. *See Davis v. Buchanan Cnty., Missouri*, No. 17-06058-CV-SJ-SWH, 2018 WL 1547131, at *5 (W.D. Mo. Mar. 29, 2018) (determining plaintiffs' allegations that ACH maintained contracts with the county to provide medical care to inmates sufficient to allege ACH was acting under color of state law); *Dennis v. Sparks*, 449 U.S. 24, 27–28, 101 S. Ct. 183, 186, 66 L. Ed. 2d 185 (1980) (noting that relevant Supreme Court cases are correctly understood to hold that acting "'under color of" state law for § 1983 purposes does not require that the defendant be an officer of the State. It is enough that he is a willful participant in joint

action with the State or its agents. Private persons, jointly engaged with state officials in the challenged action, are acting 'under color' of law for purposes of § 1983 actions."); *Huskey v. Burris*, No. 4:18-CV-00731-AGF, 2019 WL 3238507, at *5 (E.D. Mo. July 17, 2019) (considering ACH a corporation acting under color of state law based on facts that it was a private company that contracts with a county jail to provide medical services); *Oliver v. Pemiscot Cnty*., No. 1:19-CV-137-ACL, 2023 WL 12074064, at *12 (E.D. Mo. Sept. 14, 2023) (same).

A local government or private corporation performing a government function can be subject to § 1983 liability for a constitutional violation if it "resulted from (1) an official municipal policy, . . . (2) an unofficial custom, . . . or (3) a deliberately indifferent failure to train or supervise." *Watkins v. City of St. Louis, Missouri*, 102 F.4th 947, 953 (8th Cir. 2024) (internal quotations omitted). Notably, Plaintiffs did not raise claims of deliberately indifferent failure to train or supervise against ACH, and those claims against other defendants are not before the Court in this motion. For Plaintiffs' claims based on policy or custom, they must show the policy or custom is "the moving force behind the constitutional violation." *Id.* (internal quotations omitted). Further, to survive a motion to dismiss, Plaintiffs "must allege facts sufficient to state a claim for relief that is plausible on its face," and "[c]onclusory assertions that are unsupported by facts will not satisfy this pleading standard." *Id.* (internal quotations omitted).

Additionally, "[i]t is well-established that a private corporation, like ACH, will only be held liable under § 1983 for its own unconstitutional policies – and will not be liable under the doctrine of *respondent superior* for the actions of its employees." *Oliver v. Pemiscot Cnty.*, No.

1:19-CV-137-ACL, 2023 WL 12074064, at *12 (E.D. Mo. Sept. 14, 2023) (citing *Sanders v. Sears, Roebuck & Co.*, 984 F.2d 972, 975-76 (8th Cir. 1993)). In order to state a claim against ACH, Plaintiffs "must allege that a policy or custom of ACH inflicted injury actionable under § 1983." *Id.* In other words, "[t]he proper test is whether there is a policy, custom or action by those who represent [ACH's] official policy that inflicts injury actionable under § 1983." *Stearns v. Inmate Servs. Corp*., 957 F.3d 902, 906 (8th Cir. 2020) (quotations omitted). "[T]o prove a policy, custom or action, [Plaintiffs] must show 'a continuing, widespread, persistent pattern of unconstitutional misconduct' by [ACH's] employees; 'deliberate indifference to or tacit authorization of such conduct by [ACH's] policymaking officials after notice to the officials of that misconduct;' and [Decedent] 'was injured by acts pursuant to [ACH's] custom, i.e., that the custom was the moving force behind the constitutional violation.'" *Crumpley-Patterson*, 388 F.3d. at 590-91 (quoting *S.J. v. Kansas City Mo. Pub. Sch. Dist.,* 294 F.3d 1025, 1028 (8th Cir. 2002) (internal quotations and citations omitted); *accord Lisenbe*, 2022 WL 407142, at *11.

As Plaintiffs assert, they need not "specifically plead the existence of an unconstitutional policy or custom to survive a motion to dismiss." *Crumpley-Patterson*, 388 F.3d at 591 (citing *Doe*, 340 F.3d at 614). The Eighth Circuit explained in *Doe* that "[w]hen a complaint is filed, a plaintiff may not be privy to the facts necessary to accurately describe or identify any policies or customs which may have caused the deprivation of a constitutional right." *Doe*, 340 F.3d at 614. Plaintiffs "still 'must allege facts which would support the existence of an unconstitutional policy or custom.'" *Watkins*, 102 F.4th at 954 (quoting *Doe*, 340 F.3d at 614). In other words, "[d]ismissal is proper when a complaint does not contain any 'allegations, reference, or language by which one could begin to draw an inference that the conduct complained of ... resulted from

an unconstitutional policy or custom ....'" *Id*. (quoting *Doe*, 340 F.3d at 614). A single alleged constitutional violation "surely does not support the existence of a custom or policy." *Doe*, 340 F.3d.at 615.

In the case at bar, Plaintiffs have not alleged sufficient facts to support their § 1983 claims against ACH. First, Plaintiffs essentially concede that they have not identified a written ACH policy that is unconstitutional on its face and that they expressly plead an unconstitutional custom (Doc. 33 at 5). The Court's review of the Petition confirms it is void of allegations of the existence of an unconstitutional official policy, as Plaintiffs have not identified "'a deliberate choice of a guiding principle or procedure made by the [ACH] official who has final authority regarding such matters.'" *Watkins*, 102 F.4th at 954 (quoting *Mettler v. Whitledge*, 165 F.3d 1197, 1204 (8th Cir. 1999)).

Second, Plaintiffs have not alleged facts that support the existence of an unconstitutional unofficial custom. The allegations do not plausibly suggest (1) the existence of a continuing, widespread, persistent pattern of unconstitutional conduct by ACH's employees; (2) deliberate indifference to or tacit authorization of such conduct by ACH's policymaking officials after notice to the officials of that misconduct; and (3) an injury by acts pursuant to ACH's custom. *See id.* Counts II and V contain mere conclusory allegations that ACH was indifferent to or tacitly authorized a continuing, widespread, persistent pattern of unconstitutional misconduct (Doc. 3 at 29-30, 38-39). Although Plaintiffs allege ACH knew of Decedent's substantial suicide risk and must have known of the need to supply information related to a detainee's suicide status to a receiving jurisdiction when transferring a detainee, Plaintiffs only refer to a

single incident.[2] In other words, the only facts supporting the conclusory custom allegations are the facts of Decedent's care, treatment, transfer to another ACH-serviced facility, and suicide. This isolated incident of alleged misconduct "cannot, as a matter of law, establish a [] policy or custom creating liability under § 1983." *Watkins*, 102 F.4th at 954 (quoting *Ulrich v. Pope County*, 715 F.3d 1054, 1061 (8th Cir. 2013)); *see also Ball-Bey v. Chandler*, 415 F. Supp. 3d 884, 895 (E.D. Mo. 2019) (collecting cases) (While "[t]he Eighth Circuit has not directly addressed the quantum of 'continuing, widespread, persistent' conduct a plaintiff must allege to satisfy the *Iqbal* standard in this context, … it has held that isolated incidents do not suffice and that allegations of 'many' incidents do establish liability.").

In sum, Plaintiffs have neither alleged the existence of an unconstitutional ACH policy or custom, nor alleged facts that support the existence of an unconstitutional ACH policy or custom. The claims against ACH in Counts II and V will be dismissed.

**B. Wrongful Death/Medical Malpractice (Count IX)**

In Count IX, Plaintiffs bring a Missouri state law claim for wrongful death based on medical malpractice against ACH pursuant to Mo. Rev. Stat. §§ 537.080 and 538.210 (Doc. 3 at 47-49). The entirety of ACH's two-sentence argument for dismissal of this claim is that Plaintiffs have alleged no facts upon which ACH can be held liable, or which demonstrate ACH deviated from the standard of care or caused the decedent damage (Doc. 32 at 7).

In their response, Plaintiffs argue they have alleged each element of a prima facie case, including that ACH was a contracted medical provider for both facilities, ACH treated Decedent

[2] The Court is cognizant that elsewhere in their Petition, Plaintiffs include allegations of another individual's suicide after transfer to the Audrain County Jail in September of 2022, but Plaintiffs fail to include any factual allegations regarding ACH's knowledge of or involvement with the care or transfer of that individual (Doc. 3 at 22-23).

at Callaway County Jail, ACH violated the standard of care by failing to formulate, adopt, and enforce adequate rules and policies to ensure quality and continuity of care for its patients and to ensure patients at known risk of suicide were adequately monitored when transferred to another detention facility in which it operates, and that Decedent's death was a direct and proximate result of those negligent acts and omissions (Doc. 33 at 8-9).

"A *prima facie* case of medical malpractice consists of three general elements: (1) an act or omission of the defendant failed to meet the requisite medical standard of care; (2) the act or omission was performed negligently; and (3) the act or omission caused the plaintiff's injury." *Edgerton v. Morrison*, 280 S.W.3d 62, 68–69 (Mo. 2009) (citing *Sundermeyer v. SSM Reg'l Health Servs.*, 271 S.W.3d 552, 554 (Mo. banc 2008)). Where the plaintiff brings a wrongful death claim based on medical malpractice, plaintiff meets the third element by showing that the defendant's act or omission caused the decedent's death. *See, e.g., Sundermeyer*, 271 S.W.3d at 554 ("In wrongful death actions, plaintiffs must establish that, but for the defendant's actions or inactions, the patient would not have died."). "[T]wo causes that combine can constitute 'but for' causation." *Id.* (internal quotations omitted).

ACH's scant argument for dismissal of this claim is under-developed and lacks sufficient supporting authority and analysis. *See, e.g., United States v. Guzman-Tlaseca*, 546 F.3d 571, 578 (8th Cir. 2008) (noting that it is not the Court's job to research the law to support a party's argument); *Cox v. Mortg. Elec. Registration Sys., Inc.*, 685 F.3d 663, 674 (8th Cir. 2012) (finding a party waived an argument merely listed in a table of contents "by failing to provide a meaningful explanation of the argument and citation to relevant authority in their opening brief."); E.D. Mo. L.R. 4.01(A).

Ultimately, Plaintiffs' allegations appear sufficient, and ACH has failed to support its argument that they are not. *See Montgomery v. Regions Bank, Inc.*, No. 4:19-CV-03187-SPM, 2020 WL 4732049, at *4 (E.D. Mo. Aug. 14, 2020) ("The Court need not consider arguments in support of a motion to dismiss that are undeveloped or unsupported by authority."). Even in its Reply brief, ACH does little more than cite the elements of a *prima facie* case, and label Plaintiffs allegations conclusory. (*See* Doc. 34 at 6). ACH has not shown that dismissal of Count IX is appropriate at this time.

## V. Conclusion

Accordingly,

**IT IS HEREBY ORDERED** that Defendant's Motion to Dismiss (Doc. 31) is **GRANTED in part** and **DENIED in part**.

**IT IS FURTHER ORDERED** that Counts II and V are **DISMISSED** as to Defendant Advanced Correctional Healthcare, Inc.

A separate order of dismissal shall accompany this order.

Dated this 10th day of September, 2026.

/s/ Noelle C. Collins
NOELLE C. COLLINS
UNITED STATES MAGISTRATE JUDGE